(Lucas County Court of Common Pleas.)

THE MITCHELL & BOWLAND LUMBER COMPANY, v. THE WABASH RAILROAD COMPANY.

---

*Injunction—Private railroad crossing.—*
1. The owner of land through which a railroad passes has a right to a private crossing, although the right of way was appropriated, and the railroad constructed before the passage of section 3327 of the statute.

2. Where it appears that the owner has no practicable access from that part of his land on one side of the railroad to that on the other, over any public street or highway, and has not been compensated for the loss of such access, he has the right to a private crossing unless it appears that it could not be reasonably used when the company was not using the railroad at the crossing, or so near thereto as to make the crossing necessarily dangerous.

3. The landowner having complied with the requirements of a section 3328, and the company refusing to construct the crossing and declaring its intention to prevent the landowner from constructing it, company enjoined from interference with the construction of a proper crossing by the landowner. Whether the company can be required to pay the expense of construction not decided.

---

Decision of Court on petition for an injunction.

PRATT, J.

The plaintiff in this case files its petition, praying for an injunction against the defendant company, and as its material matters therein, substantially alleges, that it, as a corporation, is the owner of certain property, situate in Lucas County, Ohio, giving a description of the same by metes and bounds, as a whole tract, followed by the following

exception: "excepting, however, the ground owned by The Toledo & Wabash Railroad Company for right of way across said premises;" that the whole body of land exceeds fifteen acres, a portion of the same lying upon each side of the tracks of the railroad, and so situated that it cannot use a cross-ing, street, road, lane or by-way, in passing from its said lands on one side of said rail-road tracks to the portion of land on the other side of said tracks, without great in-convenience." It then alleges the necessity on its part of having a crossing constructed between said pieces of land; the service of the notice more than four months before the filing of the petition, requesting the railroad company to construct such crossing; the fail-ure of the railroad company to comply with such notice, and the further notice, under section 3328, that plaintiff would on a cer-tain day enter upon the lands of the railroad company to construct such crossing; that the railroad company threatens, and will, unless restrained by the order of court, pre-vent the plaintiff from so doing. There was a further allegation, in reference to crossing by Sumner street, which was abandoned upon the hearing.

To this petition the defendant files an answer, denying that the tract of plaintiff's land contains fifteen acres in one body, and alleging that the smaller parcel is a small triangular piece lying upon the northerly side of the railroad; that the railroad com-pany owns and occupies a strip of land 132 feet in width between the two parcels of plaintiff's property and uses the same for a right of way and for operating its railroad trains over the same; admits that plaintiff cannot use a street, road, lane or by-way from one of its pieces to the other without cross-ing the railroad tracks of the defendant; that for some time it has been and is using the crossing on the public street known as Sumner street, and thereby has access to its property on the northerly side; admits that it would be more inconvenient for the com-pany to use this crossing, denies that the inconvenience would be great, and denies the necessity of the proposed crossing; ad-mits the service of the notices alleged, and that it will prevent the plaintiff from con-structing the crossing.

By the way of cross-petition. the defendant company alleges that it and its predecessors have owned, used and occupied the right of way of the company, continuously, since the year 1856; that the plaintiff acquired its title in the year 1866. and alleges that the plaintiff has no interest in the property of the company. It further alleges the statutes of Ohio providing for private crossings, was passed long subsequent to the acquisition of plaintiff's property; that compensation for building a private crossing was taken into consideration and estimated as a part of the original consideration paid by the defend-ant's company's predecessors for the right of way, and sets out that the plaintiff com-pany is carrying on a large business upon its land on the northerly side of defendant

company's tracks, and that the plaintiff de-sires to construct a crossing for the purpose of carrying off a large amount of refuse material from its saw-mill and lumber yard, and depositing the same on its land upon the northerly side of defendant s tracks; and sets out other facts, for the purpose of show-ing that the construction and use of such a private crossing. if constructed, would greatly endanger the property of both parties and cause greater inconvenience than that arising from the use of the Sumner street crossing by the plaintiff. And the defendant asks, not only that the petition of the plain-tiff be dismissed, but that the plaintiff be enjoined from constructing the crossing.

The plaintiff moves to strike out from the cross-petition two portions of the same. First: The allegations as to the time and manner of acquiring title and holding posses-sion by the railroad company and as to the time of the passage of the crossing statutes; and, second: The uses to which plaintiff puts its property and also the manner of use by the railroad company of its right of way.

Plaintiff also files a reply denying that it has been accustomed to and has used the Sumner street crossing for the purpose of crossing from its land on the southerly side to that on the northerly side of the railroad; and also denies that compensation for the building of a private crossing was taken into consideration as a part of the original con-sideration for the right of way.

The case has been heard upon oral testi-mony, as upon final submission, and the opinion now announced will be upon the merits of the case, the rights of the parties being necessarily involved in considering the question of injunction, preliminary or final.

The first matter for consideration is the motion of the plaintiff to strike out portions of the defendant's cross-petition.

As to the first point, I find no satisfactory ground stated in support of the same in the argument of plaintiffs' counsel, and over-rule that part of the motion.

As to the second clause of the motion, counsel for the plaintiff in their brief cla m that it is not material whether the crossing asked for would occasion great inconvenience because it is a right which the plaintiff has. and the inconvenience occasioned to the rail-road company is not a bar to that right.

It must be borne in mind, however, that the action here is one in which the plaintiff seeks, not to enforce a legal right by a legal remedy, but he invokes the strong arm of the law by the way of injunction. It does not, therefore. necessarily follow that a mere legal right will be so enforced. but that the court upon such application should and will ex-amine into all the circumstances of the case, and if it is apparent that the relief sought is disproportioned to the extent and nature of the injury sustained, or is likely to be, that a court of equity will not interfere. And I am of the opinion that in this case the court is required to consider all the circumstances connected with or bearing upon the effect which such crossing as that now claimed

will have, or is likely to have, upon the business of these two companies.

Exceptions were taken during the hearing to testimony as to these circumstances, but none of these exceptions are, in my opinion, well taken, and are overruled.

This brings me to a consideration of The Merits of the Case; and in the order of this consideration, I will consider:

### I.

The rights acquired by the Railroad Company by Vitue of its Condemnation Proceedings.

These rights have been so fully considered and so often decided in this state so as to become a part of the elementary law of the state, and no lengthy discussion of the same is necessary here, nor any reference to the numerous decisions of the Supreme Court of this state. The foundation case in this state may properly, as I think, be said to be the able an exhaustive opinion of Judge Ranney in the case of Giesy. vs. the C. W. & Z. Railroad Company, (4 Ohio St. the case commencing on page 308, and the opinion on page 318), and in the course of his decision, among other things, on page 335—after speaking of the construction of railroads for the general use of the public, as common carriers of passengers, either by the state direct, or by other instrumentalities, he says:

"In either mode the great end is attained—a public highway, open to the use and necessary to the convenience, or business and social intercourse, of the public at large. If the latter is adopted, the private owner yields the use of his property only to the public, and just so much, and no more, as will answer their purposes, the corporation being a mere trustee of the interest for their use, with no power to divert it to any other purpose, or to hold it one moment longer than it is made to serve the uses for which it was appropriated.

### II.

The right remaining in the owner of the Fee of the Land. The owner of the land over which a railroad has acquired a right of way for its uses and purposes as such, has all that remains of the fee of the property not necessary for uses of the railroad company as such. And in determining what is so required by the railroad company, all the circumstances of the situation and position of the property relative to the railroad company's improvements and use, must be considered, involving in these considerations the amount of ground necessary for the use of the company, the kind and class of buildings necessary to be placed thereon for its uses and the number of tracks and the frequency with which it is necessary to occupy them to run its trains of cars over the same. In case of the abandonment of the property by the road, the reversion also remains in the original owner of the fee. But this occupation and use by the railroad company would not cut off the right of the property owner to cross said railroad property, in case it severed one portion of his land from another, unless the necessities of the railroad were such as either to absolutely prevent such crossing or to so endanger either the property of the company or the safety of the public in the use of such crossing in connection with the necessary use by the railroad company of its property in the carrying on and conducting its business as to render the crossing impracticable.

I do not deem it necessary to cite authorities in support of this proposition, deeming it to be substantially elementary and supported, either directly or impliedly, in decisions of the courts and statements of text writers upon this subject.

### III.

What Rights did the Present Plaintiff Acquire by Its Purchase?

In the discussion of this branch of the subject, I find it convenient to refer, in order, to the points made by counsel for the defendant in its oral argument, and also in its brief.

1. He claims that the plaintiff acquired the land in question originally in two pieces; that the description in its deed and in its petition expressly excepts land owned by the railroad company, and that it never had or claimed to have any title to the railroad company's property.

In my opinion, this claim is not well founded. It is true the description uses the word "except" where it should have used the words "subject to."

The intention of the parties is to be arrived at by the court from the whole description in the deed as reasonably applied to the nature and character of the property therein referred to. I think that the word "except" must have been used in this connection by a misconception of the scrivener in drafting the deed. With the fact apparent that as a matter of law, in case of the abandonment of this property, the amount taken for railroad purposes would revert to the owner, and that such reverter in this property would be absolutely valueless to the original owner; to suppose that that idea entered into the minds either of the grantee or grantor, that in any contingency the grantor was to have any further right, either during the life of the railroad company or after its abandonment—if it ever should abandon the right of way—would be doing violence to the plainest common sense. I do not think that the plaintiff in this case either acquired or now holds "simply two pieces of property on opposite sides of a railroad property."

2. I see no support for the position taken, that the statute in this case was intended to apply only to cases of the original construction of railroads or to farm crossings, or that the use in the original statute, or its omission in the revision, of the word "farmer" affects the question so long as the word "person" is used in both; and also in view of what seems to me to have been the evident intention to provide generally for private crossings of railroads.

3. The point, involving the consideration of the necessity for and the circumstances

attending the use of the specific property by the railroad company, I will consider further on.

4 & 5. The claim made under these two heads involves, as it seems to me, the debatable grounds upon the law of this case, and I will consider them in connection with the cases referred to, and the discussion by counsel for both parties. The positions taken, while two in fact, are so intimately relatedas to require discussion together.

The claim on the part of counsel for the defendant, is, that the damage to this property by reason of its severance by the appropriation was estimated and paid as a part of the original condemnaton money; that there being no provision at the time of this condemnation requiring a railroad to construct private crossings, that it was beyond the power of the legislature to thereafter, by subsequent statute, require the railroad company, at its own expense, or at its own damage, to construct such crossings for purely private purposes. Counsel cite the well known case of Railroad Company vs. Ball, in 5 Ohio St., commencing on page 568, and the well known and recognized rule that in fixing the amount of compensation to be awarded to the owner that the effect arising from the severance of the owner's land, as well as the uses to which it was appropriated, is to be considered. But it is a material and essential part of this rule that the damages to result from this severance must be considered in connection with the uses to which the specific land is to be appropriated by the railroad company.

If the land were to be taken by the railroad company for use as depot grounds, such use might necessarily cut off all right of the land owner to cross the land appropriated. If it were to be taken for use as a railroad yard, it might greatly lessen and interfere with such right of crossing. If it was to be used only for a single or double track of the railroad, in the open country, such right of crossing might not be materially interfered with, and the jury have always been required, in all appropriation proceedings, to consider all such facts and circumstances which might exist in a particular case in forming their estimate of compensation. If now, the statute is to be considered as a mere police regulation as to the use of this right of crossing, such police regulation would, as I think, be supported by the great weight of authority, and I would hardly think that the power of the legislatue to pass such statute would be seriously questioned.

On the other hand, if the company has legally compensated the owner for such a crossing, or has provided a sufficient crossing for him, the owner would have no reason for complaining, and if by the terms of its original charter it had not been required to provide further means of crossing than those originally contemplated at the time it acquired its property, the position that it would be beyond the power of the legislature to impose additional burdens upon the railroad company, would, I think, also be sustained by the weight of authority. Counsel for the plaintiff cites upon the propoition as to whether the property owner was compensated in the original appropriation, the case in 45 Ohio St., page 643. This case was also commented on by counsel for the defendant. In that case the appropriation proceedings were in evidence before the court.

Here, they have not been produced. The question asked by the court there was: "Does the record of that proceeding furnish a conclusive presumption that the expense of fencing was included in the verdict?" And the court says, in substance that if it may be inferred from the record that the expense of fencing as a matter of damage was necessarily involved in the proceeding shown by the record, then the position is correct. That was a case where the charter of the company was granted before the statute for fencing was passed, and the court conclude that it might or might not have been involved in the case; but then it is not to be presumed that compensation was made for the fencing. The Court gces on then and argues, substantially, that the facts might or might not have been such as to make the fencing necessary or practicable.

I do not see why this decision is not directly in point upon this question, and that if this position were to be taken, proof would not have been necessary to show compensation in this appropriation for the damages resulting from the interference with the right of the land owner to crossing the track, and if we are to go outside of any record and examine the question, whether at the time of these appropriation proceedings, in the year 1856, any idea as to crossing rights entered, or could have entered into the minds of the parties, court or jury, nothing can be found to sustain the position that any such right was ever thought of The testimony before me of the plaintiff in this case, without any resort to common knowledge, shows that the lands here in question were, at that time, of such a nature and character as to preclude any such idea.

Not to go into details of its description, the land on both sides was either an unused swale or an open pond of water.

Two cases have been cited and especially urged upon my attention by counsel for the defense, and also commented upon by counsel for the plaintiff, to which I will briefly refer. R. R. Company vs. Rowland, 35 A. & E. R. R., Cases, 286; People vs. Railway Company, 79 Michigan, 471.

Each of these suits was brought, the first under the Texas statute, requiring the railroad company to construct a crossing and providing a penalty for failure; and the second under a similar Michigan statute for the purpose of recovering a penalty provided by the statute. I think it is correctly claimed by counsel for the plaintiff in this case that in this respect these cases materially differ from the case now between these parties. The opinion in the Texas case is very full and comprehensive, citing a great

number of authorities and containing a very clear discussion of the rules of law, and the obligation of railroad companies chartered before the passage of such statutes.

In the Michigan case there are two opinions, each holding the statute unconstitutional, upon, however, somewhat different grounds. In the Texas case the right of the property owner, independent of the statute to a crossing over the railroad is not only conceded, but plainly supported; the decision, however, turning upon the question of the power of the legislature after the vesting of the rights of the railroad company under its charter, to place additional burdens upon the company. In the Michigan case the proposition is clearly stated that the police power of the state over railroad companies includes necessary regulations for the safety of the public, the ordering of passengers upon its trains or those crossing or having the right to cross the railroad; but that in so far as the statute provided for the taking of the property of the railroad company or compelling it to erect an maintain crossings when no statute required them to existed at the time of the construction of the road, is unconstitutional, and Judge Morse, in his decision, on page 474, states the principles fully recognized in this state, as well as elsewhere, in the following language:

"But I am satisfied that a railroad company does not stand, as to the exercise of state control, upon the same footing as private persons, and that its property can be subjected to burdens not imposed on the mere owners of private property, used purely and exclusively for private interests and purposes, for the reason that all property devoted to public uses takes on quasi public qualities, and is therefore subject to limitations on such use by the state, and to legislative control, when such control seems necessary to the legislature, and is reasonable; and of the necessities of such control the legislature is the sole judge, and courts can only inquire into the reasonableness of the methods of such control."

In conclusion, under this head, I will say, that in my opinion there is nothing in these decisions or in any others with which I am acquainted, which would deny the right of the legislature to regulate the method of farm crossings, and that I am not required now to determine whether, in case this plaintiff does construct the crossing here contemplated and brings an action against the railroad company to recover the expense of so doing, it could sustain such an action, and I therefore do not determine or give any opinion upon that question here.

IV—The Facts.

It only remains to consider the facts in this case appearing in the evidence, in connection with the statutes in question.

Section 3327 of the statutes makes the right of the land-owner to a crossing depend upon the fact that he cannot use the public crossing "without great inconvenience," and that he shall only use such a crossing when the company is not using the railroad at the crossing, or so near there as to render the crossing dangerous. By its terms, therefore, the statute requires the consideration of these two questions of respective danger and convenience of the respective parties. Their rights are relative and not absolute. Either must submit to useful regulations and restrictions in the exercise of its rights. The evidence in this case is before me, and the testimony of the plaintiffs, that of the general yardmaster and of the local agent of the railroad company and the maps and plats introduced, and not to go into this testimony at large, but simply to state my conclusions, I find from this evidence:

1. That plaintiff has at this time no practicable access from its southerly to its northerly property, over any street or highway; and that it could not by any improvement of the streets procure such access to its northerly property by which it could reach it without great inconvenience. The burden of showing this is upon the plaintiff, and I think it is fairly established.

2. On the part of the defendant company, the testimony of its said officers shows that the construction of this proposed crossing would inconvenience the railroad company; but, in my judgment, it does not show that the plaintiff might not use a crossing constructed at a lower point or the easterly point of the plaintiff's property on the northerly side of the road; that it might not reasonably be used when the company is not using it, and when it would not be necessarily dangerous for them to do so. The testimony of Mr. Pierce, its yardmaster, is substantially, that while they were using it all the time, they were not using it, as he says, "minutely," but that there would be probably 15 or 20 minutes when there would be no trains, and then for the next two hours there might be an engine passing every two or three minutes: and while he goes on at large—as does also the agent—into a description of the difficulties resulting from such a crossing I do not think they will be greater or more dangerous or hazardous, than many other crossings used constantly by steam railroads, or electric or other street railroads. It is a matter of common knowlege that many crossings are used in many cities for the purposes of general traffic, where cars pass fully as frequently, if not more frequently, than is shown by the testimony of these witnesses or where they cross many more tracks than those which would be necessary to be crossed at or near the point which I have indicated. The common observation of any one who shall observe the frequency of the running of electric cars on the Cherry street, Adams street and Monroe crossings in this city and of the amount of traffic that is going on at those points, must, in my judgment, necessarily conclude that such a crossing here would have less elements of danger than those well-known public crossings. While engines and cars are moving at the points

here named with greater frequency than trains upon either single or double tracks of railroads in the open country, still they are necessarily moved much more slowly, and when they should be and in fact must necessarily be, and are, held in close control by those operating them, the dangers either to the public or those using the private crossing, are, in many respects, less than those to persons crossing in the open country.

This crossing should be, of course, carefully constructed, and by a person skilled in the business and at a point where the fewest number of tracks are required to be crossed, in order to enable the plaintiff to have reasonable access to its property upon the north side of the road. Taking the blue print as a guide, while the court cannot fix this exact point, I think it might be substantially at the point where there are, as shown by the blue print, but three tracks of the railroad. I do not, however, undertake to fix this point, and only hold that the plaintiff has the right to such crossing at the best practicable point, concluding that the parties can mutually agree upon this point; and if they should not so agree, I will appoint competent engineers, as referees or commissioners, to determine it.

With this provision I grant the prayer of the petition for injunction, and refuse that of the cross-petition.

J. W. Cummings, for plaintiff.

A. L. Smith, for defendant.